COASTAL OIL STORAGE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55124. Filed March 29, 1956.

**2.** *Held, further,* that in the computation of tentative tax under section 108 (g) (1), relating to the portion of the taxable year before April 1, 1951, to which section 15 (c) does not apply, section 129 does not operate to disallow the exemption and credit since the benefit thereof did not stem from the acquisition of the tanks.

*Jack White, Esq.,* for the petitioner.
*Raymond Whiteaker, Esq.,* for the respondent.

OPINION.

ATKINS, *Judge:* In determining the deficiency for the taxable period from February 1, to June 30, 1951, which was the petitioner's first taxable year, the respondent disallowed the $25,000 exemption from surtax provided in section 15 (b) of the Internal Revenue Code of 1939, and the $25,000 minimum excess profits credit provided in section 431 of that Code, relying upon section 15 (c)[1] of the Code which was added by section 121 (f) of the Revenue Act of 1951. The propriety of those disallowances is the sole issue.

On brief the respondent states that section 15 (c) has no application to that part of the taxable year falling before March 31, 1951, namely, the months of February and March, but that it is applicable to the months of April, May, and June, citing section 29.15-2 (f) of Regula-

---

[1] SEC. 15. SURTAX ON CORPORATIONS.

(c) DISALLOWANCE OF SURTAX EXEMPTION AND MINIMUM EXCESS PROFITS CREDIT.—If any corporation transfers, on or after January 1, 1951, all or part of its property (other than money) to another corporation which was created for the purpose of acquiring such property or which was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor corporation or its stockholders, or both, are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then such transferee corporation shall not for such taxable year (except as may be otherwise determined under section 129 (b)) be allowed either the $25,000 exemption fror surtax provided in subsection (b) or the $25,000 minimum excess profith credit provided in the last sentence of section 431, unless such transferee corporation .shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer. For the purpose of this subsection, control means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote or at least 80 per centum of the total value of shares of all classes of stock of the corporation. In determining the ownership of stock for the purpose of this subsection, the ownership of stock shall be determined in accordance with the provisions of section 503, except that constructive ownership under section 503 (a) (2) shall be determined only with respect to the individual's spouse and minor children. The provisions of section 129 (b), and the authority of the Secretary under such section, shall, to the extent not inconsistent with the provisions of this subsection, be applicable to this subsection. This subsection hall not apply to any taxable year with respect to which the tax imposed by subchapter D of this chapter is not in effect.

tions 111 (added to. the regulations by T. D. 6024, 1953–2 C. B. 91), which in turn refers to section 29.108–6 (added to the regulations by T. D. 5969, 1953–1 C. B. 122). However, he contends that the disallowance of the exemption and the credit for the months of February and March, and indeed for the whole taxable year, is justified under section 129 of the 1939 Code.[2]

A brief summary of the statutory provisions is helpful before we reach the precise question or questions to be decided. Section 15 (b) grants to corporations a surtax exemption in the amount of $25,000. This is accomplished by imposing a surtax on "surtax net income in excess of $25,000." Section 430 imposes an excess profits tax upon a corporation's adjusted excess profits net income. Section 431 allows a minimum credit of $25,000 in arriving at the amount of income subject to excess profits tax. This is accomplished by defining adjusted excess profits net income as the excess profits net income minus the sum of specified credits, and if that "sum is less than $25,000, it shall be increased to $25,000."

Section 15 (c), the application of which is our immediate concern and which has been quoted in the footnote, was enacted as a part of the Internal Revenue Code by section 121 (f) of the Revenue Act of 1951. Section 125 of the Revenue Act of 1951 provides that certain amendments, which include section 15 (c), are applicable only with respect to taxable years beginning after March 31, 1951, and to taxable

---

[2] SEC. 129. ACQUISITIONS MADE TO EVADE OR AVOID INCOME OR EXCESS PROFITS TAX.

(a) DISALLOWANCE OF DEDUCTION, CREDIT, OR ALLOWANCE.—If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation.

(b) POWER OF COMMISSIONER TO ALLOW DEDUCTION, ETC., IN PART.—In any case to which subsection (a) is applicable the Commissioner is authorized—

(1) to allow as a deduction, credit, or allowance any part of any amount disallowed by such subsection, if he determines that such allowance will not result in the evasion or avoidance of Federal income and excess profits tax for which the acquisition was made ; or

(2) to distribute, apportion, or allocate gross income, and distribute, apportion, or allocate the deductions, credits, or allowances the benefit of which was sought to be secured, between or among the corporations, or properties, or parts thereof, involved, and to allow such deductions, credits, or allowances so distributed, apportioned, or allocated, but to give effect to such allowance only to such extent as he determines will not result in the evasion or avoidance of Federal income and excess profits tax for which the acquisition was made ; or

(3) to exercise his powers in part under paragraph (1) and in part under paragraph (2).

years beginning on January 1, 1951, and ending on December 31, 1951. Such section refers to section 131 of that act for the treatment of taxable years beginning before April 1, 1951, and ending after March 31, 1951. Section 131 of that Act amends section 108 of the Internal Revenue Code, relating to fiscal year taxpayers, by adding subsection (g) which provides that in the case of a taxable year of a corporation beginning after June 30, 1950, and before April 1, 1951, and ending after March 31, 1951, the tax imposed by sections 13 and 15 shall be an amount equal to the sum of—

(1) that portion of a tentative tax, computed under the provisions of sections 13 and 15 applicable to such taxable year, which the number of days in such taxable year prior to April 1, 1951, bears to the total number of days in such taxable year, plus

(2) that portion of a tentative tax, computed under the provisions of sections 13 and 15 applicable to years beginning on April 1, 1951, as if such provisions were applicable to such taxable year, which the number of days in such taxable year after March 31, 1951, bears to the total number of days in such taxable year.

Under (1) above the portion of the tentative tax would be computed without taking into consideration section 15 (c), in view of the provisions of section 125 of the Revenue Act of 1951 referred to above, whereas in computing the portion of the tentative tax under (2) above, section 15 (c) would be taken into account.

It, therefore, appears that the Commissioner correctly concedes that section 15 (c) can in no event have any application in the prescribed computation of the tax insofar as it applies to the months of February and March of the petitioner's taxable year.

We turn to a consideration of the question whether the respondent erred in disallowing under section 15 (c) the exemption and the credit for the months of April, May, and June, the remaining months in the petitioner's taxable period. Both the petitioner and the respondent rely upon section 29.15–2 of Regulations 111[3] (added to the regulations by T. D. 6024, 1953–2 C. B. 91).

Here the petitioner acquired property, seven oil storage tanks, from another corporation, Coastal Terminals, Inc., and the petitioner was organized for the purpose of acquiring that property. The trans-

---

[3] Section 29.15–2 of Regulations 111 provides in part as follows :

For disallowance of the surtax exemption and minimum excess-profits credit under section 15 (c), it is not necessary that the obtaining of either such credit or exemption or both have been the sole or principal purpose of the transfer of the property. It is sufficient if it appears, in the light of all the facts and circumstances, that the obtaining of such exemption or credit, or both, was one of the major considerations that prompted the transfer. Thus, the securing of the surtax exemption or the minimum excess-profits credit may constitute "a major purpose" of the transfer, notwithstanding that such transfer was effected for a valid business purpose and qualified as a reorganization within the meaning of section 112 (g). The taxpayer's burden of establishing by the clear preponderance of the evidence that the securing of either such exemption or credit or both was not "a major purpose" of the transfer may be met, for example, by a showing that the obtaining of such exemption, or credit, or both, was not a major factor in relationship to the other consideration or considerations which prompted the transfer.

feror of the property was in control of the petitioner in the taxable year through its ownership of 100 per cent of the petitioner's stock which it acquired as a part of the consideration for the transfer of the tanks. Upon these facts the provisions of section 15 (c) make the disallowance of the exemption and the credit automatic unless the petitioner has met the burden placed upon it by the provisions of the "unless" clause in section 15 (c). That clause reads:

unless such transferee corporation [the petitioner] shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer.

The stipulation of facts contains no facts dealing with the purpose for the transfer of the storage tanks from Coastal Terminals, Inc., to the petitioner. The only evidence in this regard is the testimony of the president of the petitioner who was also president of Coastal Terminals, Inc., and his testimony is relatively brief. He testified that the experience of Coastal Terminals, Inc., led to the belief that when the supply situation eased there would be greater opportunity for profits in commercial business than in doing business with the Government; that accordingly discussions were had as to the soundness of separating the renegotiable income from the commercial income; that it was necessary to make reports each year as to the renegotiable income if the renegotiable income exceeded a certain amount; that it was simpler to have a separate set of books for the two types of income; that therefore the management of Coastal Terminals, Inc., suggested to the board of directors that a new corporation be formed to handle the commercial business; that in October 1950, the board authorized the formation of the petitioner; that the segregation of the commercial from the renegotiable business proved advantageous in connection with a threatened claim by the Government for $150,000 of excessive profits, in that the company was successful in proving that it had not made excessive profits, considering the invested capital and the borrowed capital employed; that while the split-up was principally for the convenience of the Coastal Terminals, Inc., it also proved to be quite convenient to the Office of the Quartermaster General; that this arrangement proved advantageous in talking to various prospects for other commercial contracts and also to the Government; that the records have been used to point out to the Army that the income from storage for the Government was not comparable with the income derived from commercial business; and that other contracts were made with the Navy and with the Quartermaster General.

We do not doubt the testimony of this witness and have found as a fact that a purpose in organizing the petitioner and transferring the tanks to it was the separation of operations under storage con-

tracts with the Government from operations under contracts with others. However, he did not testify that this was the only purpose or that the obtaining of the exemption and the credit was not a major purpose in the transaction. Although he testified that the tax consequences of the transaction were discussed he did not state whether, or to what extent, the tax benefit to be derived influenced the decision to set up the new corporation and transfer the tanks to it. Nor did his testimony establish that substantially the same protection against renegotiation could not have been obtained by Coastal Terminals, Inc., without the creation of another corporation, by keeping entirely separate records for the two classes of customers. Under the circumstances, we are constrained to the view that the taxpayer has failed to establish by the clear preponderance of the evidence that the securing of the exemption or the credit or both was not a major purpose of the transfer of the property to the petitioner.

On brief, counsel for the petitioner, relying upon the last sentence of section 29.15–2 of Regulations 111, contends that it has been shown that the obtaining of the exemption and the credit was not a major purpose, because the advantage gained by the obtaining of the exemption and the credit amounted tax-wise to only $3,588.31, and that this is a relatively unimportant consideration compared to the protection against renegotiation of profits in the amount of $150,000. However, since it has not been shown that Coastal Terminals, Inc., could not have protected itself against renegotiation by itself carrying on the two types of business and keeping separate books and records for each type, we are of the opinion that the comparison posed by the petitioner does not represent a true comparison of the benefit derived in the renegotiation matter due to the creation of the petitioner and its conduct of the commercial business, and the tax benefit which might be derived from the creation of the petitioner if it were allowed the exemption and the credit.

Accordingly, we hold that in the computation of that portion of the tentative tax prescribed by section 108 (g) (2), quoted hereinabove (relating to that portion of the taxable year after March 31, 1951), the petitioner is not entitled to the benefit of the surtax exemption or the minimum excess profits credit.

As heretofore stated, the respondent also makes the contention that the surtax exemption and the minimum excess profits credit are properly disallowed by virtue of the provisions of section 129 of the Code, quoted in footnote 2 above. Since we have sustained the respondent's disallowance of the exemption and the credit on the basis of section 15 (c) as to that portion of the taxable period consisting of April to June, inclusive, the effect of the respondent's reliance upon section 129 is to support his disallowance of the exemption and credit for that

portion of the taxable period consisting of the months of February and March 1951. As previously pointed out, section 15 (c) has no application to these 2 months of the taxable period. The respondent says that the effect of that section is to work a disallowance to any corporation when control of another corporation is acquired for the principal purpose of securing the benefit of a deduction, credit, or other allowance which it would not otherwise enjoy. That argument, presumably, is based on the language of clause (1) of section 129 (a) which treats of the acquisition of control of a corporation. It is not an apt argument here, for this petitioner did not acquire control of another corporation.

If the transaction before us comes within section 129 at all it must be under clause (2) which deals with the acquisition by a corporation of property of another corporation, which was not controlled prior to the acquisition, by the acquiring corporation or its stockholders, and where the basis of the property acquired is determined with reference to the basis in the hands of the transferor corporation.

In the case of any acquisition described in section 129, the disallowance of a deduction, credit or other allowance is proper where the principal purpose of the acquisition is evasion or avoidance of tax "by securing the benefit of a deduction, credit, or other allowance which such [acquiring] person or corporation would not otherwise enjoy * * *." We have held that the word "otherwise" can only be interpreted to mean that a deduction, credit, or allowance, if it is to be disallowed under section 129, must stem from the acquisition. See *Commodores Point Terminal Corporation*, 11 T. C. 411, in which we discussed in considerable detail the legislative history and purpose of section 129. In that case the taxpayer corporation had acquired a controlling stock interest in another corporation, and one of the issues was whether it was entitled to a dividends received credit with respect to dividends on the stock. In holding that section 129 did not operate to deny the credit we pointed out that the dividends, and the consequent credit, were not dependent on the taxpayer's having acquired control of the other corporation, and that the only effect of control was as to the amount of the dividends and the credit. Applying similar reasoning here, we are of the opinion that the petitioner's right to the benefit of an exemption and a credit was not dependent upon its acquisition of the tanks from Coastal Terminals, Inc. Those tanks, of course, did not carry with them a right to an exemption or a credit. Accordingly, we hold that the acquisition of the tanks did not secure to the petitioner the benefit of any exemption or credit which it would not otherwise enjoy under sections 15 (b) and 431, respectively, and that therefore section 129 has no application in the instant case.

It follows that in the computation of that portion of the tentative tax prescribed by section 108 (g) (1), quoted hereinabove (relating to that portion of the taxable year prior to April 1, 1951), the petitioner is entitled to the benefit of the surtax exemption and the minimum excess profits credit.

*Decision will be entered under Rule 50.*