**COASTAL OIL STORAGE COMPANY,**
Petitioner and Cross-Respondent,

v.

**COMMISSIONER OF INTERNAL
REVENUE,** Respondent and
Cross-Petitioner.

No. 7351.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 23, 1957.

Decided March 11, 1957.

Jack White, Charleston, S. C., for petitioner and cross-respondent.

Earl E. Pollock, Asst. to Solicitor General (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Joseph F. Goetten, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent and cross-petitioner.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and GILLIAM, District Judge.

PARKER, Chief Judge.

These are cross appeals from the decision of the Tax Court of the United States reported in 25 T.C. 1304. The questions involved relate to the right of a corporate taxpayer to the $25,000 corporate surtax exemption and minimum excess profits credit, granted respectively by section 15(b) and section 431 of the Internal Revenue Code of 1939, 26 U.S. C.A. § 15(b), 26 U.S.C.A. Excess Profits Taxes, § 431. The corporation was organized February 1, 1951. The surtax exemption and minimum excess profits credit were claimed for the months of February to June 1951. They were denied by the Tax Court for the months of April, May and June 1951 under the restrictions imposed by section 15(c) of the Tax Code but allowed for the months of February and March for the reason that the restrictions imposed by that section were not applicable in the latter months. The taxpayer appeals from the denial for the months of April, May and June, the Commissioner from the allowance for February and March, the Commissioner contending that they should be denied for those months under the provisions of section 129(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 129 (a).

### Taxpayer's Appeal

Coastal Terminals, Inc. was organized in 1944 for the purpose of supplying and storing petroleum products. It constructed a terminal at North Charleston, S. C. and leased some of the storage facilities there to the office of the Quartermaster General under renegotiable contracts. On February 1, 1951 Coastal Terminals, Inc., caused the taxpayer, the Coastal Oil Storage Company, to be organized and transferred to it seven oil storage tanks, with a capacity of 150,000 barrels, for $100,000 of the capital stock of taxpayer, which was all of the capital stock that taxpayer issued, and a note for $38,706.79, which taxpayer paid off at the rate of $5,062.50 per month until it was extinguished. The reason given in the testimony before the Tax Court for the creation of taxpayer was to separate storage operations under storage contracts with the government from operations under contracts with others; but it was admitted that tax aspects of the transaction were taken into consideration and no satisfactory reason was given why the same advantages could not have been obtained by separate bookkeeping that were obtained by separate incorporation, which necessarily resolved itself into little more than separate bookkeeping. As a result of the incorporation of taxpayer, the operations at North Charleston received two $25,000 surtax exemptions and minimum excess profits credits instead of one; and the Tax Court found that taxpayer had failed to establish by a clear preponderance of the evidence that the securing of the extra exemption or credit, or both, was not a major purpose of the transfer of the property to the taxpayer. It, therefore, denied the exemption for the months of April, May and June 1951, under section 15(c) of the Tax Code,[1] the pertinent portion of which is as follows:

"If any corporation transfers, on or after January 1, 1951, all or part of its property (other than money) to another corporation which was created for the purpose of acquiring such property or which was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor corpo-

1. This section was added by section 121 (f) of the Revenue Act of 1951 and is applicable only after March 31, 1951, 65 Stat. 468 et seq.

ration or its stockholders, or both, are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then such transferee corporation shall not for such taxable year (except as may be otherwise determined under section 129(b)) be allowed either the $25,000 exemption from surtax provided in subsection (b) or the $25,000 minimum excess profits credit provided in the last sentence of section 431, unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer."

■ We agree with the Tax Court that the taxpayer failed to sustain the burden of proof imposed by the statute to "establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer". Since the keeping of separate records as to government business would have accomplished the separation of government business from other business just as well as the incorporation of a subsidiary corporation, it is difficult to see how the incorporation and transfer could have had any real purpose other than tax avoidance. At all events, we would not be justified in setting aside the finding of the Tax Court as clearly erroneous.

### The Commissioner's Appeal

While admitting that the section of the Revenue Code above quoted has no application to income for the months of February and March 1951, the Commissioner contends that the taxpayer should be denied the surtax exemption and minimum excess profits credit for those months under the provisions of section 129(a) of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1943, c. 63, 58 Stat. 21, entitled "Acquisitions made to evade as void income or excess profits tax," the pertinent portion of which is as follows:

"(a) Disallowance of Deduction, Credit, or Allowance.—If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation."

■ The Tax Court considered this contention of the Commissioner but held the section inapplicable, without passing on the question as to whether or not tax evasion or avoidance was the principal purpose of the transfer in question. In this we think there was error. It is clear that the parent corporation acquired complete control of taxpayer through stock ownership and the parent corporation was certainly a person within the meaning of subsection (1) of the statute. As a result of the transfer of its property in exchange for the stock, it was able to obtain through this splitting up of its corporate business the benefit of an exemption and credit which it would not otherwise have enjoyed.

While the exemption is claimed by taxpayer, the sole benefit thereof would accrue to the parent corporation, the sole owner of its stock. Cf. Higgins v. Smith, 308 U.S. 473, 476, 60 S.Ct. 355, 84 L.Ed. 406. We see no reason, therefore, why subsection (1) of the section is not applicable. Subsection (2) is applicable also, since taxpayer, as a result of the transfer from the parent corporation, received property having a basis for tax purposes which would be determined by reference to its basis in the hands of the parent corporation,[2] and the transfer resulted in the securing of a surtax exemption and minimum profits credit, to which neither the taxpayer nor the parent corporation would have been entitled otherwise; for the taxpayer could not have enjoyed the benefit of the surtax exemption and excess profits tax credit but for the acquisition of the property producing the income from or against which the exemption and credit are claimed. That the section was intended to reach just such schemes for tax evasion or avoidance by the splitting up of a business enterprise clearly appears from the H.Rep. No. 871, 78th Cong. 1st Sess., p. 49, where it is said:

> "This section adds a new section 129 to Chapter 1 of the Code providing that in the case of acquisitions on or after October 8, 1940, of an interest in or control of corporations or property which the Commissioner finds to be principally motivated by or availed of for the avoidance of income or excess profits tax by securing the benefit of a deduction, credit, or other allowance, then the tax benefits are to be disallowed or allowed only in part in a manner consistent with the prevention of tax avoidance. This section is designed to put an end promptly to any market for, or dealings in, interests in corporations or property which have as their objective the reduction through artifice of the income or excess profits tax liability.

> "The crux of the devices which have come to the attention of your committee has been some form of acquisition on or after the effective date of the Second Revenue Act of 1940, but the devices take many forms. Thus, the acquisition may be an acquisition of the shares of a corporation, or it may be an acquisition which follows by operation of law in the case of a corporation resulting from a statutory merger or consolidation. The person, or persons, making the acquisition likewise vary, as do the forms or methods of utilization under which tax avoidance is sought. Likewise, the tax benefits sought may be one or more of several deductions or credits, including the utilization of excess profits credits, carry-overs, and carry-backs of losses or unused excess profits credits, and anticipated expense of other deductions. In the light of these considerations, the section has not confined itself to a description of any particular methods for carrying out such tax avoidance schemes but has included within its scope these devices in whatever form they may appear. *For similar reasons, the scope of the terms used in the section is to be found in the objective of the section, namely, to prevent the tax liability from being reduced through the distortion or perversion effected through tax avoidance devices.* * * *." (Italics supplied.)

This accords with the interpretation placed upon the section by a later Congress, where in the Senate report on proposed amendments to the corporate surtax exemption provisions, it was said (S.Rep. No. 2375, 81st Cong.2d Sess. p. 70, 2 Cum.Bull. 483, 533):

2. It is not disputed that the basis of the seven storage tanks in the hands of the taxpayer should be determined by reference to the basis in the hands of the parent corporation under sections 112(g) (1) (D) and 113(a) (7) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 112(g) (1) (D), 113(a) (7) (B).

"It is not intended, however, that the exemption of the first $25,000 of a corporation's surtax net income from the surtax shall be abused by the splitting up, directly or indirectly, of a business enterprise into two or more corporations or the forming of two or more corporations to carry on an integrated business enterprise. It is believed that sections 45 and 129 will prevent this form of tax avoidance."

The Tax Court refers to its decision in Commodores Point Terminal Corp. v. Com'r, 11 T.C. 411; but that was an entirely different case from this and is no precedent for its decision here. There a corporation had acquired a controlling interest in another corporation and the question was whether it was entitled to a dividends received credit on the stock purchased in the transaction. The Tax Court in allowing the credit pointed out that the dividends, and consequent credit, were not dependent on the taxpayer's having acquired control of the other corporation. In this case, as pointed out above, the taxpayer could not have enjoyed the exemption and credit claimed but for the acquisition of the property producing the income, which was transferred to it by the parent corporation. There, not only was there a holding that there was no purpose of tax avoidance, but the transaction was not one which involved tax avoidance. Here there can be no question but that tax avoidance necessarily resulted from the corporate splitting which was involved.

■ Taxpayer says that the Commissioner may not rely upon section 129(a) because this section was not relied on in his statutory notice to the taxpayer upon which the jurisdiction of the Tax Court was invoked. The Commissioner did, however, deny the surtax exemption and excess profits credit to taxpayer for the entire five months period; and in the Tax Court he relied upon section 129 (a) as well as upon 15(c) in support of his position, and the applicability of 129(a) was expressly passed upon and denied by the Tax Court. When the ac-

tion of the Commissioner was legally correct on the facts, it should not be held erroneous merely because he referred to the wrong section of the statute as supporting it; and particularly is this true when it appears that before the Tax Court he relied upon the section which was applicable and supported his action.

The decision of the Tax Court will accordingly be affirmed as to the matters embraced in Taxpayer's appeal and reversed as to the matters embraced in the Commissioner's appeal; and the case will be remanded to the Tax Court for further proceedings not inconsistent herewith.

Affirmed on Taxpayer's Appeal.

Reversed and Remanded for further proceedings on Commissioner's Appeal.