BEACON AUTO RADIATOR REPAIR CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5156–67. Filed April 28, 1969.

*John R. Berman*, for the petitioner.
*Rufus E. Stetson, Jr.*, for the respondent.

158

OPINION

RAUM, *Judge:* Although the Commissioner originally relied upon both sections 269 and 1551 of the 1954 Code to deny petitioner the surtax exemption for the years involved, he has limited his position on brief to section 1551 which is set forth in full in the margin below.[1]

---

[1] SEC. 1551. DISALLOWANCE OF SURTAX EXEMPTION AND ACCUMULATED EARNINGS CREDIT.

(a) IN GENERAL.—If—

(1) any corporation transfers, on or after January 1, 1951, and on or before June 12, 1963, all or part of its property (other than money) to a transferee corporation,

(2) any corporation transfers, directly or indirectly, after June 12, 1963, all or part of its property (other than money) to a transferee corporation, or

(3) five or fewer individuals who are in control of a corporation transfer, directly or indirectly, after June 12, 1963, property (other than money) to a transferee corporation,

and the transferee corporation was created for the purpose of acquiring such property or was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor or transferors are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then for such taxable year of such transferee corporation the Secretary or his delegate may (except as may be otherwise determined under subsection (d)) disallow the surtax exemption (as defined in section 11(d)), or the $100,000 accumulated earnings credit provided in paragraph (2) or (3) of section 535(c), unless such transferee corporation shall establish by the clear proponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer.

(b) CONTROL.—For purposes of subsection (a), the term "control" means—

(1) With respect to a transferee corporation described in subsection (a) (1) or (2), the ownership by the transferor corporation, its shareholders, or both, of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock; or

(2) With respect to each corporation described in subsection (a) (3), the ownership by the five or fewer individuals described in such subsection of stock possessing—

(A) at least 80 percent of the total combined voting power of all classes of stock

That section, in substance, provides, in the case of a transfer of property by one corporation to another corporation (created to receive the property or formerly inactive) under common control (as defined), that the surtax exemption may be disallowed unless the transferee establishes by a clear preponderance of the evidence that the securing of the exemption was not a major purpose of the transfer. There is no dispute between the parties in this case that there was a transfer of property to petitioner, or that petitioner was created for the purpose of acquiring such property, or that there was the requisite common control of both corporations, all in accordance with the provisions of section 1551. The sole matter in controversy is whether "a major purpose" of the transfer was to secure the surtax exemption.

It is clear that the prohibited purpose need not be the sole or principal purpose; it is sufficient merely that it be a major one. Thus a showing of a major business purpose does not necessarily preclude a finding that a major purpose was to secure the exemption. Using language that is plain beyond any reasonable ambiguity Congress has not only placed upon the taxpayer the heavy negative burden of proving that the securing of the exemption was not "a" major purpose, but has also required it to carry that burden by "the clear preponderance of the evidence." Cf. *Hiawatha Home Builders, Inc.*, 36 T.C. 491, 498–499; *Cronstroms Manufacturing, Inc.*, 36 T.C. 500, 506; *Truck Terminals, Inc.*, 33 T.C. 876, 884, affirmed on other issues 314 F. 2d 449 (C.A. 9).

In this case no evidence at all was presented as to whether the objective of securing a surtax exemption was a factor, major or otherwise, in the transfer from Beacon to petitioner. While it is true that Sorkin testified that he had consulted neither Beacon's lawyer nor its accountant prior to the decision to form petitioner, there was no evidence whatever as to the role the securing of the exemption may or may not have played in the decision. Petitioner's failure to present evidence in this regard must be taken to weigh against it. See *Coastal Oil Storage Co.*, 25 T.C. 1304, 1311, affirmed on this issue 242 F. 2d 396 (C.A.

---

entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and

(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such individual only to the extent such stock ownership is identical with respect to each such corporation.

For purposes of this subsection, section 1563 (e) shall apply in determining the ownership of stock.

(c) AUTHORITY OF THE SECRETARY UNDER THIS SECTION.—The provisions of section 269 (b), and the authority of the Secretary under such section, shall, to the extent not inconsistent with the provisions of this section, be applicable to this section.

4) ; *Central Valley Management Corp.* v. *United States*, 165 F. Supp. 243, 245 (N.D. Cal.). To be sure, it has been held in some instances that the taxpayer may carry its burden of proof under section 1551 if it can show that there were such purposes for making the transfer that it would have been made regardless of whether an additional surtax exemption could have been secured. *Bush Hog Manufacturing Co.*, 42 T.C. 713, 728; *Cronstroms Manufacturing, Inc.*, 36 T.C. at 506; *Hiawatha Home Builders, Inc.*, 36 T.C. at 499. In the present case, however, the alleged business purposes advanced to support the creation of petitioner appear to us to be pitifully weak. We do not believe on the evidence before us that any such purposes in fact were the true motives for transferring the radiator repair business to petitioner, and certainly no such motives were established by any "clear preponderance of the evidence." We conclude that we are unable to find that the securing of an exemption was not a major purpose. In arriving at this conclusion, we are mindful that the expectations involved in the transfer need not be fulfilled, but need only to have been held in good faith. *Sno-Frost, Inc.*, 31 T.C. 1058, 1063.

Petitioner argues that there were several business purposes for its formation, which negative the existence of a major purpose to obtain the exemption. We cannot find on this record that any one of such purposes in fact existed or, if they existed, that they were the real reasons for the transfer of Beacon's repair work to petitioner.

(a) The principal purpose relied upon by petitioner revolves around the argument that since Beacon was engaged in the manufacture, sale, and repair of radiators, and since some of its customers for new radiators also did repair work on radiators, those customers regarded Beacon as being in competition with them, with the result that Beacon's sales to them might be adversely affected. Thus, the argument continues, by divorcing the repair work from the manufacturing and selling operations, the source of possible conflict would be eliminated, Beacon would not lose customers by reason of such conflict, and customers previously lost might be regained after they learned that Beacon no longer was engaged in repair work and that such work was being performed by a separate corporation. We think that his argument is spurious and that no such purpose played any part in the organization of petitioner.

It wholly escapes us why a customer would feel any less concerned about the repair work merely because it was being carried on by a different corporation. The hard fact of competition remained, and it was competition at the same location, carried on in the same manner as before under substantially the same name, and under the guidance and ownership of the same persons. We reject as unbelievable the testimony to the extent that it suggests that this factor played any part in

the transfer of the repair business to petitioner. The facts here are sharply different from those in other cases in which taxpayers were held to have sustained their burden under section 1551 by showing *inter alia* a valid business purpose to separate from the corporation a business through which it competed with the customers of another of its business enterprises. Cf. *New England Foundry Corp.*, 44 T.C. 150; *Hiawatha Home Builders, Inc.*, 36 T.C. 491. Unlike these cases, no real attempt was made in the present case to impress upon customers that Beacon and petitioner were wholly separate entities. Their corporate names were very similar; they operated from the same building, which bore no sign that two separate corporations were located therein; they shared the same telephone number. Petitioner's president testified that the names were kept similar in order that petitioner might capitalize on Beacon's goodwill, a purpose seemingly antithetical to the purpose of separating the manufacturing from the repair business in the minds of the customers of the manufacturing business who did not wish to compete with the repair business. The testimony of a customer that was offered by petitioner in support of its position was not convincing.

(b) A somewhat related business purpose advanced by petitioner concerns the difficulties that Beacon was experiencing in obtaining warranty work on General Motors automobiles since Beacon did not have a Harrison radiator dealership or franchise. However, it was not made clear to us that there was any reasonable expectation that a Harrison franchise would be obtained by transferring the repair work to another corporation; none was in fact obtained by petitioner; nor indeed was there any evidence that petitioner even attempted to obtain a Harrison franchise. We cannot find on this record that the problems experienced by Beacon in respect of its lack of a Harrison franchise as it affected repairs on General Motors automobiles were responsible in any material way for the decision to transfer its repair work to petitioner.

(c) Another alleged purpose relates to an air-conditioner franchise which Beacon held from the John E. Mitchell Co. Under that franchise Beacon sold and installed automobile air conditioners manufactured by the Mitchell Co. The argument made by petitioner is that Beacon was deprived of that franchise because Mitchell was concerned that Beacon, a manufacturer, might undertake to fabricate air conditioners in competition with Mitchell, and that a major purpose in creating petitioner was to regain the franchise. The short answer to this point is that, as the evidence unfolded, it became clear that the Mitchell franchise was taken away from Beacon several months *after* the creation of petitioner, and that accordingly, this consideration could not have been a factor in the incorporation of petitioner.

The testimony of petitioner's president that the air-conditioner franchise played a part in the decision to form petitioner was unconvincing, and there was no evidence that Beacon was informed prior to petitioner's formation that it might lose the franchise. Similarly, for these reasons, we cannot accord any weight to petitioner's claim that Beacon was concerned about insulating the manufacturing business from possible liability arising from the installation of air conditioners. Moreover, there was no convincing evidence that Beacon was in fact concerned about any such possible liability. The entire argument relating to air conditioners is a spurious one.

Petitioner has failed to convince us of any permissible nontax purpose under section 1551 that impelled its formation and the concomitant transfer of property by Beacon. Petitioner has failed to show that the securing of a surtax exemption was not a major purpose by showing other purposes that would have prompted the transfer regardless of that tax benefit. While we do not find affirmatively that securing the exemption was a major purpose, we cannot find that it was not, and we certainly cannot find that petitioner has established that it was not by "the clear preponderance of the evidence" as required by section 1551.

*Decision will be entered for the respondent.*