**BOBSEE CORPORATION et al.,**
Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 25899.

United States Court of Appeals
Fifth Circuit.

May 1, 1969.

Rehearing Denied May 23, 1969.

George W. Ericksen, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellants.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Robert I. Waxman, Attys., Dept. of Justice, Tax Div., Washington, D. C., Edward F. Boardman, U. S. Atty., Tampa, Fla., for appellee. Robert B. McGowan, Asst. U. S. Atty., of counsel.

Before GEWIN and BELL, Circuit Judges, and BOOTLE, District Judge.

GEWIN, Circuit Judge:

The appellants are four separately incorporated citrus groves which brought suit in the United States District Court for the Middle District of Florida seeking a refund of allegedly excessive and unlawfully collected income taxes paid for their respective fiscal years ended in 1961. The principal questions before the district court were whether the corporate surtax exemption could be disallowed on the basis of section 269 of the Internal Revenue Code of 1954, and if so, whether the principal purpose for creating the appellants was tax avoidance. The court held as a matter of law that section 269 is applicable to the surtax exemption and the jury resolved the factual dispute in favor of the Government. The appellants contend here that both determinations were erroneous and, additionally, that other reversible errors were committed during the trial. We affirm the judgment of the district court.

I

Since the Government introduced only documentary evidence, the pertinent facts are largely undisputed. Prior to 1956, Herbert and Sallie Massey jointly owned ten citrus groves in Pasco County, Florida. Seven of the groves were mature and producing and three were immature. All caretaking functions were performed with equipment owned and crews hired by Mr. Massey. In July 1956, the seven mature groves were separately incorporated; the appellants in this case—Bobsee Corporation, Southsee Corporation, Northsee Corporation, and Lions Farm, Inc.—are four of those groves. At about the same time, another corporation was formed to take over the caretaking operations. Although Mr. Massey received all the stock issued by the caretaking corporation, each of the incorporated groves distributed its shares to Mr. and Mrs. Massey jointly.[1] The three immature groves remained unincorporated and in the joint ownership of the Masseys, apparently as tenants by the entireties.

After an audit of the appellants' 1961 income tax returns, the Internal Revenue Service determined that the taxes reported were deficient because, under section 269 of the Internal Revenue Code of 1954, the appellants were not entitled to the full benefit of the twenty-two percent surtax exemption then applicable. During the relevant period, subsection 269(a) (1) provided in pertinent part:

> If * * * any person or persons * * * acquire * * *, directly or indirectly, control of a corporation * * *, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person * * * would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed.

The IRS took the position that the business conducted by the appellants was essentially a single enterprise and that their quadrifid form was conceived for the principal purpose of tax avoidance. The appellants paid the tax deficiencies

---

1. Subsequently the stock in the grove corporations was redistributed, Mr. Massey receiving approximately 38 percent and Mrs. Massey receiving approximately 62 percent of the outstanding shares of each. However, these later transfers are not relevant to the issues *sub judice*.

under protest and then instituted suit in the district court for refund.

## II

 The bedrock of the appellants' position is that "the plain language of the Code itself" shows that subsection 269 (a) (1) is inapplicable to the surtax exemption.[2] We have no difficulty rejecting this argument: whatever else may be said of this provision, its applicability or inapplicability is certainly not revealed by a mere reading of the statutory language. The subsection states in effect that, if A acquires B for the principal purpose of tax avoidance, then A cannot have the tax benefit which the ownership of B would otherwise entail. In a number of early cases, the Tax Court held that section 269 could not be used to deny a deduction, credit, or allowance to an *acquired,* as opposed to an *acquiring,* corporation.[3] When the question arose in the Fourth Circuit, however, the Tax Court's construction was rejected. In Coastal Oil Storage Co. v. Commissioner of Internal Revenue[4] a parent corporation had created a subsidiary principally for tax purposes and the Government had denied the subsidiary the right to take the "deduction, credit, or other allowance." The court's sole advertence to the acquired-corporation issue was an almost silent but limpidly eloquent statement:

> While the exemption is claimed by taxpayer, the sole benefit thereof would accrue to the parent corporation, the sole owner of its stock.[5]

The reasoning implicit in this statement has been elaborated by various courts[6] and commentators.[7] Whether the *acquired* corporation should suffer the disallowance depends upon whether the antecedent of the word "which" is *benefit* rather than *deduction, credit, or other allowance.* Of course, if the antecedent is *benefit,* then the acquired corporation must suffer the disallowance in order to deny the benefit to the acquiring corporation. Since either reading of the section was permissible, grammatically speaking, the court chose the more expansive alternative in accordance with its view of the section's legislative history.[8] Moreover, the Ninth Circuit in Commissioner of Internal Revenue v. British

---

2. In connection with their argument on the applicability of section 269 and a subsequent contention, the appellants incorporate by reference seventeen pages of memorandums from the multilith record. This clearly misconceives the object and purpose of a brief. Moreover, since their brief is forty-four pages long, the incorporated material made the brief excessively long under Fed.R.App.P. 28(g). We do not approve this practice.

3. *See, e. g.,* British Motor Car Distributors, Ltd., 31 T.C. 437 (1958); T.V.D. Co., 27 T.C. 879 (1957); Wage, Inc., 19 T.C. 249 (1952); A. B. & Container Corp., 14 T.C. 842 (1950); Alprosa Watch Corp., 11 T.C. 240 (1948) (dictum). The Tax Court subsequently rejected its earlier construction. *See, e. g.,* Thomas E. Snyder Sons Co. v. Commissioner, 34 T.C. 400 (1960), aff'd 288 F. 2d 36 (7th Cir. 1961); Frank Spingolo Warehouse Co., 37 T.C. 1 (1961); H. F. Ramsey Co., Inc., 43 T.C. 500 (1965).

4. 242 F.2d 396 (4th Cir. 1957).

5. Id. at 399.

6. *See* James Realty Co. v. United States, 280 F.2d 394 (8th Cir. 1960), aff'g 176

F.Supp. 306 (D.Minn.1959); Commissioner of Internal Revenue v. British Motor Car Distributors, Ltd., 278 F.2d 392 (9th Cir. 1960).

7. *See, e. g.,* Emmanuel & Lipoff. Commissioner v. Corporate Complex: An Expanding Attack, 15 U.Fla.L.Rev. 352, 357–59 (1963); Kirkpatrick, Section 269 of the 1954 Code—Its Present and Prospective Function in the Commissioner's Arsenal, 15 Tax L.Rev. 137, 156–57 (1960); Sharp, Multiple Tax Benefits through Multiple Incorporation: Some Thoughts on the Law As It Is and As It Ought to Be, 40 Bost.U.L.Rev. 375, 387–89 (1960); Note, Multiple Incorporation to Obtain Additional Accumulated Earnings Credits and Surtax Exemptions, 44 Minn.L.Rev. 485, 501 (1960).

8. In Mill Ridge Coal Co. v. Patterson, 264 F.2d 713 (5th Cir.), cert. denied, 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959), a case not involving multiple corporations, this court has followed the *Coastal Oil* decision in applying section 269 to deny the allowance to the acquired corporation.

Motor Car Distributors, Ltd.[9] enunciated an additional reason for applying subsection 269(a)(1) to deny an allowance to an acquired corporation. The court points out that, while clause (2) of the subsection refers only to *corporate* acquirers,[10] clause (1) uses the words "person or persons." Thus, to construe the subsection to apply only to an acquired *corporation* would necessarily limit the application of the provision to corporations and, a fortiori, preclude application to non-corporate acquirers in the face of a clear indication that the latter were intended to be covered.

Another question relevant to the multi-corporate situation is whether the *creation* of a corporation is the *acquisition* of it within the meaning of subsection 269(a)(1). In James Realty Co. v. United States,[11] the Eighth Circuit answered this question in the affirmative. The court merely adopted the reasoning of the district court that neither the policy nor the legislative history of the subsection suggests that *acquisition* be given a restrictive meaning. After a careful examination of the relevant legislative history, we are convinced that *James Realty* correctly disposed of this question. The general thrust of the committee reports is that the provision was intended to thwart known and existing as well as unknown and prospective tax-avoidance schemes.[12] Obviously, the courts must be careful in applying such an open-ended provision. A problem generally conceived can be specifically attacked but the statutory language must be reasonably applicable, in concept and in policy, to the proscribed activity. However, we do not think that the use of the word *acquires* is a sufficient conceptual obstacle, in view of the basic consonance of the provision in both concept and policy, to preclude its application to the *creation* of a corporation.

In spite of the rather substantial judicial authority against their position,[13] the appellants remain undaunted.

9. 278 F.2d 392 (9th Cir. 1960).

10. During the relevant period, the pertinent part of subsection 269(a)(2) provided:
 If * * * (2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such * * * corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed.

11. 280 F.2d 394 (8th Cir. 1960).

12. See S.Rep. No. 627, 78th Cong., 1st Sess. (1943); H.R.Rep. No. 871, 78th Cong., 1st Sess. (1943). The Senate report states:
 The objective of the section, as stated in the report on the House bill, is to prevent the distortion through tax avoidance of the deduction, credit, or allowance provisions of the code, par-

ticularly those of the type represented by the recently developed practice of corporations with large excess profits (or the interests controlling such corporations) acquiring corporations with current, past, or prospective losses or deductions, deficits, or current or unused excess profits credits, for the purpose of reducing income and excess profits taxes.
S.Rep. No. 627, at 58.

13. When this case was tried below the Fourth, Seventh, Eighth, and Ninth Circuits had already applied subsection 269(a)(1) in a multiple-corporation situation to deny the surtax exemption. Coastal Oil Storage Co. v. Commissioner of Internal Revenue, 242 F.2d 396 (4th Cir. 1957); Napsky v. Commissioner of Internal Revenue, 371 F.2d 189 (7th Cir. 1966); James Realty Co. v. United States, 280 F.2d 394 (8th Cir. 1960); Made Rite Inv. Co. v. Commissioner of Internal Revenue, 357 F.2d 647 (9th Cir. 1966); Bonneville Locks Towing Co. v. United States, 343 F.2d 790 (9th Cir. 1965); Kessmar Const. Co. v. Commissioner of Internal Revenue, 336 F.2d 865 (9th Cir. 1964). Subsequent to the oral argument in this case, the Second and Fifth Circuits have joined the courts applying the subsection to the surtax exemption; however, in neither court was

Their main argument is an intricate description of the legislative genesis of several pertinent provisions, from which the inference is drawn that section 1551—not section 269—is *the* proper provision of the Internal Revenue Code for impeding the abuse of the surtax exemption. The appellants are quite confident in conceding the applicability of section 1551 because, during the taxable period involved here, that section expressly applied only to deny the surtax exemption or accumulated earnings credit to a newly active transferee corporation where the transferor corporation transferred some or all of its property to the transferee and a major purpose of the transfer was to secure the exemption or credit for the transferee.[14] Effective June 12, 1963, section 1551 was amended to apply to a transfer by five or fewer individuals, thus bringing a situation like the present case within its terms.[15]

██ The vipers' tangle of overlapping provisions applicable to the multiple-corporation situation—*e. g.*, sections 269, 482, 1551, 1561 and 1562—leaves much to be desired.[16] However, it is clear that section 269 has never been excluded from the field by section 1551. Even as presently broadened, section 1551 does not purport to reach every attempted abuse of the surtax exemption. For example, section 1551 does not apply where the individual transferors exceed five in number. Moreover, the treatment of the proscribed purpose of tax avoidance in the two sections indicates that section 1551 was intended to have a more specific and stringent application. Thus section 1551 comes into play whenever a "major purpose" was to secure the ex-

the applicability of the provision challenged. Dorba Homes, Inc. v. Commissioner of Internal Revenue, 403 F.2d 502 (2d Cir. 1968); Airport Grove Corp. v. United States, 408 F.2d 870 (5th Cir. 1969); Green Light Co. v. United States, 405 F.2d 1068 (5th Cir. 1968).

14. During the taxable period involved in this case, section 1551 provided in part:

If any corporation transfers, on or after January 1, 1951, all or part of its property (other than money) to another corporation which was created for the purpose of acquiring such property or which was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor corporation or its stockholders, or both, are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then such transferee corporation shall not for such taxable year (except as may be otherwise determined under section 269(b)) be allowed either the $25,000 exemption from surtax provided in section 11(c) or the $60,000 accumulated earnings credit provided in paragraph (2) or (3) of section 535(c), unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer.

15. Section 1551 presently provides in part:

If * * * five or fewer individuals who are in control of a corporation transfer, directly or indirectly, after June 12, 1963, property (other than money) to a transferee corporation, and the transferee corporation was created for the purpose of acquiring such property or was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor or transferors are in control of such tansferee corporation during any part of the taxable year of such transferee corporation, then for such taxable year of such transferee corporation the Secretary or his delegate may (except as may be otherwise determined under subsection (d)) disallow the surtax exemption (as defined in section 11(d)), or the $100,000 accumulated earnings credit provided in paragraph (2). or (3) of section 535(c), unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer.

16. The IRS has an unusual array of weapons, both statutory and judicial, for attacking tax avoidance through multiple corporations. See Ferguson & Ross, 1964 Ann.Survey of Am.L. 201, 250–56 (1965); Note, Multiple Incorporation to Obtain Additional Accumulated Earnings Credits and Surtax Exemptions, 44 Minn.L.Rev. 485 (1960).

emption or credit while section 269 applies only where the "principal purpose" is tax avoidance; on the other hand, the requisite interest representing the proscribed purpose is 80 percent under section 1551 but only 50 percent under section 269. Moreover, as Professors Bittker and Eustice observe:

§ 1551(c) recognizes the possibility of overlap with § 269 by providing that the exemption or credit may be allowed in part by the service under the authority of § 269(b), thus permitting partial allowance of these items if tax avoidance will not result.[17]

The Senate committee report on the Revenue Act of 1964 stated:

[T]he Internal Revenue Code contains several provisions designed to prevent taxpayers from using the multiple form of corporate organization, to avoid taxes. For example, present law provides (sec. 269) that where an individual or corporation *acquires control of a corporation and the principal purpose of the acquisition is the evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance,* this deduction, credit, or allowance is not to be allowed. Also, elsewhere (sec. 1551) present law provides that if a corporation transfers part or all of its property (other than money) to another corporation created to acquire the property, or not actively engaged in business at the time of the transfer, and if there is common control of the two corporations, then the transferee cor-

poration is not to be allowed the $25,-000 surtax exemption or the $100,000 accumulated earnings credit unless it establishes by the clear preponderance of the evidence that the securing of the exemption or credit is not a major purpose of the transfer.[18]

■■■ The appellants further contend that the House committee report on the Revenue Bill of 1943 makes clear that section 269 applies only to devices intended to reduce taxable income. Thus, they argue, since the surtax exemption does not reduce taxable income, it cannot be a "deduction, credit, or other allowance." The pertinent language in the House report shows the vapidity of this contention:

The term "deduction, credit or allowance" has reference to any provision which has the effect of diminishing the tax liability resulting from the gross amount of any item of income or the aggregate of the gross amounts of any or all items thereof.[19]

If the committee had intended to say "reducing taxable income," it certainly would not have said "diminishing the tax liability resulting from the gross amount." It is clear that the committee intended its language to have a broad scope and that the surtax exemption is an *allowance* within the meaning of the section.

The appellants' only answer to the judicial authority contrary to their position is that the courts have failed to grasp the real import of the legislative history of section 269. We have already disposed of

17. Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 674 (2d ed. 1966).

18. S.Rep. No. 830, 88th Cong., 2d Sess. 149 (1964). For other expressions of the applicability of section 269 to the surtax exemption, *see* H.R.Rep. No. 749, 88th Cong.. 1st Sess. 117 (1963); S.Rep. No. 781, 82d Cong., 1st Sess. 68 (1951); S. Rep. No. 2375, 81st Cong., 2d Sess. 70 (1950). We agree with the appellants' statement that these subsequent legislative statements are not part of the history of section 269. *See* Waterman S.S. Corp. v. United States, 381 U.S. 252, 269, 85

S.Ct. 1389, 14 L.Ed.2d 370 (1965); United States v. Price, 361 U.S. 304, 312, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960). However, the corollary of this proposition is *not that such statements should be disregarded altogether.* Although a committee report written with regard to a subsequent enactment is not legislative history with regard to a previously enacted statute, *it is entitled to some consideration as a secondarily authoritative expression of expert opinion.*

19. H.R.Rep. No. 871, 78th Cong., 1st Sess. 49 (1943).

this argument. Accordingly, we hold that subsection 269(a) (1) is applicable in a multiple-corporation situation to prohibit the abuse of the surtax exemption.[20]

### III

■■ The proscription of section 269 obtains where the *principal purpose* for the acquisition of a corporation is tax avoidance. The IRS has determined that each of the appellant corporations was organized for the principal purpose of obtaining the surtax exemption and this determination is presumptively correct.[21] The burden of proving that tax avoidance was not the principal purpose is on the taxpayer.[22] Theoretically the question of purpose is purely subjective; pragmatically, however, the trier of fact can only determine purpose from objective facts. Thus, unless the taxpayer can muster facts sufficiently plausible to convince the trier of the purity of his motives, the IRS will prevail.

■ Under the definition of "control" in subsection 269(a), the presence of a principal tax-avoidance purpose on behalf of any fifty-percent interest in an acquired corporation renders the corporation subject to disallowance of the surtax exemption. Of course, the purpose of the actual fifty-percent shareholder may in certain circumstances be completely irrelevant. For example, if a business manager attends to all the details of a business—including the organization of corporate forms—the owner's mind might be a perfect tabula rasa. The relevant "mind" is the person who actually has a purpose, that is, other than the general purpose of making money.[23] Thus the statute cannot be sidestepped by merely divorcing purpose from ownership.[24]

■ This court has held that the *principal purpose* is the purpose which exceeds all other purposes in importance.[25] Citing Treas.Reg. § 1.269–3 (1962), both parties state a standard different from the one adopted by the court, *viz.*, that a purpose is the principal purpose if it exceeds in importance *any other one purpose*. The standard suggested by this regulation is given by the Senate committee report:

'The House. bill made section 129 [now section 269] operative if one of the principal purposes was tax avoidance. Your committee believes that the section should be operative only if the evasion or avoidance purpose out-

20. It may be noted, however, that we are inclined to agree with Professors Bittker and Eustice that this application of section 269 "probably represents the high water mark of the Commissioner's efforts." Bittker & Eustice, Federal Income Taxation of Corporation and Shareholders 637 (2d ed. 1966).

21. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

22. Green Light Co. v. United States, 405 F.2d 1068, 1070 (5th Cir. 1968); Dorba Homes, Inc. v. Commissioner of Internal Revenue, 403 F.2d 502, 505 (2d Cir. 1968).

23. Classical analysis would probably deem the general desire to make money a *motive* rather than a purpose. *See* Blum, Motive, Intent, and Purpose in Federal Income Taxation, 34 U.Chi.L.Rev. 485, 486–87 (1967). However, since triers of fact are not likely to observe such refinements, the terms are treated as synonymous in this largely pragmatic analysis.

24. In Dorba Homes, Inc. v. Commissioner of Internal Revenue, 403 F.2d 502 (2d Cir. 1968), the controlling owners of two corporations—Lumar Homes, Inc. and Dewmar Construction Co., Inc.—were the wives of the actual promoters. The Second Circuit held that, since the wives did not appear and testify on behalf of the taxpayer-corporations, the IRS could not prevail because the ownership of the controlling shares could not be attributed to the husbands. *Id.* 506–507. We cannot accept this analysis for two reasons. First, the burden of proof is on the corporations to prove that tax avoidance was not the principal purpose of their formation; if the purpose of the controlling owners is relevant and they do not come forward on behalf of the corporations, then the IRS must prevail. And second, the facts surrounding the formation of both the wives' corporations indicate that the wives' purpose, if any, was irrelevant.

25. Green Light Co. v. United States, 405 F.2d 1068, 1070 (5th Cir. 1968).

ranks or exceeds in importance, any other one purpose.[26]

It seems clear that the Senate amendment was intended to increase the quantum of tax motivation necessary to bring a transaction within the proscription of the statute. However, as defined in the Senate report, *the* principal purpose could be a less significant motivation than that required by the House bill. For instance, if an acquirer has one very minute non-tax motive and a slightly more intense tax motive, then the standard articulated by the committee report would permit the application of section 269 even though the acquirer had other non-tax purposes greatly exceeding the tax purpose. Consequently, our *Green Light* decision heeded the policy and the actual language of the section rather than the abortive attempt at definition in the Senate committee report. As we view the operation of the statute, there are only two relevant classes of purposes: tax-avoidance and non-tax-avoidance; the statute applies only if the former class exceeds the latter.[27]

The appellants contend that they have conclusively proved that tax avoidance was not the principal motive for their formation and that the district court should have granted their motion for directed verdict. The legal hurdle which they must surmount is rather high indeed:

[A] motion for a directed verdict should not be granted if there is substantial credible evidence which would support a verdict for the party against whom the motion is made; * * * if there is a conflict in substantial evidence, or if there is no conflict but reasonable minds may draw contrary inferences from the same evidence, then a jury question is presented.[28]

Since the controlling factual issue here is a mental state, it is clear that the only direct evidence must come from the individuals who organized the appellants. The Government's evidence is necessarily circumstantial because it is practically limited to proving that the formation of the corporations resulted in tax savings and that, in light of surrounding facts, non-tax motives were improbable. From such evidence, the jury could legitimately infer that the individuals intended the consequences of their acts.

The appellants' primary contentions are (1) that, if either Mr. or Mrs. Massey was not principally motivated by tax avoidance, they must prevail and (2) that the evidence establishes that Mrs. Massey's sole purpose was the attainment of flexibility for estate planning. During the trial, Mrs. Massey testified without contradiction that she had favored incorporating the groves solely because she thought that the properties could be devised more readily and equitably in corporate form.

There are two reasons why Mrs. Massey's testimony is insufficient. First, the jury could reasonably have ignored her professed motivation. To establish a principal non-tax motive she had to justify the creation of *seven* corporations; however, the reason she gave would only justify the formation of a single corporation. Mrs. Massey made no attempt to show why the stock of one corporation was not as flexible for estate purposes as the stock of seven corporations. Thus her motive could reasonably be rejected as the principal purpose for incorporating the groves separately.

---

26. S.Rep.No.627, 78th Cong., 1st Sess. 59 (1943).

27. We note that the district court in its charge gave the proper definition initially but subsequently used the "any other purpose" language. Considered as a whole, we think the jury understood the correct meaning of the term, *i. e.*, the ordinary import of the words. *See* Garrett v. Campbell, 360 F.2d 382, 386 (5th Cir.

1966); Messer v. L. B. Foster Co., 254 F.2d 412, 414–415 (5th Cir. 1958). In any event, the appellants did not object to the court's definition, and there certainly was no plain error committed. *See, e. g.*, Sheppard Federal Credit Union v. Palmer, 408 F.2d 1369 (5th Cir. 1969).

28. Green Light Co. v. United States, 405 F.2d 1068, 1071 (5th Cir. 1968).

Second, even if Mrs. Massey's non-tax purpose was unassailable, the jury could nonetheless have found for the Government because of Mr. Massey's principal motive. Since he was a joint owner of the corporations, he was a person who had acquired *control* within the meaning of the statute.[29] Therefore, if the jury could reasonably find that he had formed the appellants principally for a tax-avoidance purpose, then the jury's verdict is final. In this regard, we think that Mr. Massey's non-tax purposes at most created a jury issue. He conceded during the trial that one of the important motivating considerations for organizing the corporations was the tax angle. Additionally, he mentioned that he had read about powerful new pesticides killing people and indicated that the corporations were intended to insulate and spread liability. He did not, however, indicate that the appellants used or even contemplated using any dangerous pesticide. He admitted on cross-examination that the caretaking operations were covered by Florida workmen's compensation and that each of the groves had, both before and after incorporation, been covered by liability insurance. Other than reiterating his wife's estate-planning motive, the only other purpose mentioned by Mr. Massey was one rather painfully articulated as the "problem of having some areas killed off by a freeze and leaving the others." As the appellants' counsel explained subsequently, what Mr. Massey intended to say was that separate corporations could be readily abandoned if any grove was destroyed by cold weather. Needless to say, this "justfication" is less than overwhelming.

It is perfectly clear that the appellants were not entitled to a directed verdict. Alternatively, they argue that the jury's verdict was against the weight of the evidence and, therefore, that the district court should have granted their motion for a new trial. We reject this contention also. A new trial cannot be granted unless the verdict is against the great weight of the evidence and, even then, it is within the discretion of the trial court.[30] It is sufficient to say that we think the verdict in this case is well supported by the evidence.

## IV

The appellants make two additional contentions which may be disposed of summarily. First, they contend that the form of the special verdict did not provide "the means of manifesting and recording the alternative jury conclusions," and that the court's reiteration of the words "evasion and avoidance" and the appellants' burden of proof was prejudicially erroneous. The special issue submitted to the jury asked:

> Have the plaintiffs proved by a preponderance of the evidence that avoidance of federal tax liability was not the principal purpose for separating into 7 corporations the business activity formerly operated by Herbert Massey and his wife?

This question could have been stated differently but it is essentially correct. Moreover, we do not find the court's reiteration to have been prejudicially excessive.[31]

The appellants' final contention is that the district court committed

---

29. Subsection 269(a) defines the term *control* to mean [the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation.] Additionally, it may be noted that Mr. Massey was the dominant force behind the organization of the appellants, and, to a large extent, he represented his wife's interest. As both the Masseys testified,

Mrs. Massey was primarily a housewife who was only occasionally and peripherally concerned with her husband's business. Thus the relevance of Mrs. Massey's purpose is decidedly overshadowed by the fact that her husband was the ultimate business decision-maker.

30. Cities Service Oil Co. v. Launey, 403 F. 2d 537, 540 (5th Cir. 1968).

31. *See* Palmer v. Miller, 145 F.2d 926, 931 (8th Cir. 1944).

reversible error when it allowed the Government to introduce in evidence tax returns of Mr. and Mrs. Massey and the seven corporations covering almost a ten-year period and that the court compounded its error by permitting the Government to use a chart summarizing the returns during closing argument. We cannot agree. The returns of the corporations were relevant to show that they had taken the surtax exemption and the returns of the individuals were relevant to show that they had benefited by the multi-corporate arrangement. The question before the jury was the individuals' principal purpose at the time of the organization of the corporations. Proof of tax benefit from the transaction certainly need not be limited to any given taxable year or years. Additionally, we find no impropriety in the Government's summary chart; the trial court properly exercised its discretion in permitting the use of the chart.[32]

Accordingly, we affirm the judgment of the district court.

Affirmed.

---

32. *See* Myers v. United States, 356 F.2d 469 (5th Cir. 1966) (per curiam); Lloyd v. United States, 226 F.2d 9, 16 (5th Cir. 1955).