COMMODORES POINT TERMINAL CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15421.   Promulgated September 27, 1948.

*Edward McCarthy, Esq.*, and *John M. Markley, Esq.*, for the petitioner.

*Homer F. Benson, Esq.*, for the respondent.

414

**OPINION.**

ARUNDELL, *Judge*: The principal issue involved herein is whether respondent's disallowance of certain deductions on the basis of section 129 of the Internal Revenue Code was proper. Respondent's conten-

tion is that petitioner's principal purpose in its acquisition of control of the Piggly Wiggly Corporation was to avoid or evade Federal income or excess profits tax by securing the benefit of a deduction, credit, or allowance which it would not have otherwise enjoyed.

Section 129, enacted as law in the Revenue Act of 1943, so far as it is material in the present case is set out below.[1]

An examination of the legislative intent behind the enactment of section 129 is necessary to the determination of its scope and applicability in the facts before us.

Section 129 was introduced at the first session of the 78th Congress as section 115 of H. R. 3687 and read, in part: "If any person or persons acquire, on or after October 8, 1940, directly or indirectly, an interest in, or control of, a corporation, or property, and the Commissioner finds that one of the principal purposes for which such acquisition was made or availed of is the avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance, then such deduction, credit, or other allowance shall not be allowed." In the accompanying report of the Committee on Ways and Means of the House it was stated that "this section is designed to put an end promptly to any market for, or dealings in, interests in corporations or property which have as their objective the reduction through artifice of the income or excess profits tax liability."

In the Senate, this section became section 122, and the House version was amended by eliminating the necessity of an express finding by the Commissioner, and the phrase "or availed of." Another amendment was made by the addition of the phrase "which such person would not otherwise enjoy." This qualification limited the applicability of the section to those cases where the deduction, credit, or allowance resulted from, or was attributable to, the acquired control. The report of the Senate Committee on Finance stated that the objective of the section was "to prevent the distortion through tax avoidance of the deduction, credit, or allowance provision of the code, particularly those of the type represented by the recently developed practice of corporations with large excess profits (or the interests controlling such corporations) acquiring corporations with current, past, or prospec-

---

[1] SEC. 129. ACQUISITIONS MADE TO EVADE OR AVOID INCOME OR EXCESS PROFITS TAX.

(a) DISALLOWANCE OF DEDUCTION, CREDIT, OR ALLOWANCE.—If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) * * * and the principal purpose for which such acquisition was made is evasion or avoidance of federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation.

tive losses or deductions, deficits, or current or unused excess profits credits, for the purpose of reducing income and excess profits taxes. The House Report also recognized that the legal effect of the section is, in large, to codify and emphasize the general principle set forth in *Higgins* v. *Smith*, 308 U. S. 473, and in other judicial decisions, as to the ineffectiveness of arrangements distorting or perverting deductions, credits, or allowances so that they no longer bear a reasonable business relationship to the interests or enterprises which produced them and for the benefit of which they were provided." The report also stated: "Your committee believes that the section should be operative only if the evasion or avoidance purpose outranks or exceeds in importance any other one purpose."

In the report of the Conference Committee the categories of tax evasion and tax avoidance selected for specific treatment under section 129 were described as those "characterized either by the acquisition of control of a corporation, or by the acquisition of property (with a transferred basis) by one corporation from another not controlled immediately prior to such acquisition by such first corporation. As contrasted with the House bill, the conference agreement narrows the scope of the section, considered desirable in view of the extent to which the House provision overlapped the broad provisions of section 45 of the Code (control cases) and 141 of the Code (affiliated cases), and of the principle of *Higgins* v. *Smith*, 308 U. S. 473, and in order to emphasize the special function of the section, namely, to give tax enforcement agencies a clear basis for administration in those areas in which abuses are most apt to occur."

As to the acquisition of control, it is stated in Treasury Regulations 111, section 29.129–3, that "the principal purpose for which the acquisition was made must have been the evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy. The principal purpose actuating the acquisition must have been to secure the benefit which such person or persons or corporation would not otherwise enjoy. If this requirement is satisfied, it is immaterial by what method or by what conjunction of events the benefit was sought. If the purpose to evade or avoid Federal income or excess profits tax exceeds in importance any other purpose, it is the principal purpose."

The applicability of section 129, upon which respondent has based his disallowance of the deductions in issue, is contingent upon the existence of two conditions: (1) The "person" must have acquired, directly or indirectly, on or after October 8, 1940, control of a corporation, and (2) the principal purpose for which the acquisition was made must have been the evasion or avoidance of Federal income or excess

profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy.[2]

The first condition, that of acquired control, on or after October 8, 1940, presents no difficulty in the present case, as petitioner's control of the Piggly Wiggly Corporation is conceded by petitioner to have come about on December 21, 1944, with its acquisition of 200,000 shares of the 342,616 shares then outstanding.

However, control in itself is not determinative. This section condemns tax avoidance only when there is acquisition of control and the employment of that control for the principal purpose of avoiding or evading tax, the acquiring person thereby securing the benefit of a deduction, credit, or allowance "which such person or corporation would not otherwise enjoy." The word "otherwise" can only be interpreted to mean that the deduction, credit, or allowance, if it is to be disallowed, must stem from the acquired control.

The dividends received credit claimed by petitioner in its 1944 return was in no sense dependent upon petitioner's acquisition of a controlling interest in the Piggly Wiggly Corporation. Petitioner would have received dividends and would have been entitled to claim a dividends received credit proportionately as great from any number of shares less than an amount constituting a controlling interest. There is no evidence, nor does the respondent suggest, that petitioner received its dividends by virtue of its controlling interest. In this case the number of shares held by petitioner was determinative only of the amount of dividends received, and the control acquired was incidental to the primary purpose of the acquisition which was to increase the petitioner's gross income.

The documentary stamp tax deduction and the accrued interest deduction could not have been challenged by the respondent under section 129 had the purchase involved less than a controlling interest. The facts in the present case indicate nothing more than an accidental acquisition of a controlling interest which bore no real relation to the deductions claimed. Under these circumstances, respondent in his disallowance of these deductions was in error.

---

[2] SEC. 29.129–1 [Regulations 111]. MEANING AND USE OF TERMS.—As used in section 129 * * *

(a) The term "allowance" refers to anything in the internal revenue laws which has the effect of diminishing tax liability. The term includes, among other things, a deduction, a credit, an adjustment, an exemption, or an exclusion.

(b) The phrase "evasion or avoidance" is not limited to cases involving criminal penalties, or civil penalties for fraud.

(c) The phrase "Federal income or excess profits tax" refers to any Federal tax imposed by Congress upon an income base.

(d) The term "control" means the ownership of stock possessing at least 50 per cent of the total combined voting power of all classes of stock entitled to vote, or at least 50 per cent of the total value of shares of all classes of stock of the corporation. * * *

(e) The term "person" includes an individual, a trust, an estate, a partnership, a company, or a corporation.

Petitioner's purchase of the controlling interest in the Piggly Wiggly Corporation was not, as condemned by the report of the Senate Committee on Finance, an example of a corporation with large excess profits acquiring a corporation with current, past, or prospective losses or deductions, deficits, or current or unused excess profits credits for the purpose of reducing income or excess profits taxes. There is no evidence that such deductions, credits, or allowances existed. The evidence, to the contrary, clearly shows that the deductions claimed by petitioner arose from the receipt of dividend payments and were never available to the "acquired" corporation or W. R. Lovett. It is significant that had the petitioner not received these dividends there would have been a net loss for the year 1944 and no tax liability whatsoever.

It is our opinion that the transaction consummated between petitioner and W. R. Lovett was not an arrangement which distorted or perverted deductions, credits, or allowances so that they no longer bore a "reasonable business relationship to the interests or enterprises which produced them and for the benefit of which they were provided."

The evidence indicates that a real and substantial business purpose existed behind this arrangement. Petitioner suffered losses of approximately $21,000 in 1943, and with the $20,000 received as dividends from Piggly Wiggly in 1944 it showed in that year a profit of only $16,000 before taxes. At the time of the transfer it was apparent to the petitioner that it might expect annual dividends from the stock in excess of the $9,150 it would be obliged to pay as interest on its collateral trust bonds which were issued in exchange for such stock. Petitioner since 1944 has expended large sums on repairs and new installations, the money for which would not have been available except for this new source of revenue. There can be no doubt that the opportunity to secure this new source of income, which promised to provide the funds for repairs, the expansion of existing facilities, and the interest payments on its original mortgage bonds, was the principal purpose in its acquisition of the 200,000 shares of the Piggly Wiggly Corporation.

As pointed out in Treasury regulations and in the reports of the committees of Congress, a tax avoidance purpose incidental to such a transaction does not necessarily bring it within the condemnation of section 129. The tax avoidance purpose must exceed in importance any other purpose to constitute the "principal purpose." The fact that Lovett may have made a tax saving is of no moment.

From the facts contained in the record, and an examination and consideration of the transaction in all its ramifications, we are satisfied that a real and substantial business purpose, beneficial to peti-

tioner, and not a sham or unrealistic plan primarily designed for tax evasion or avoidance, was the dominating motive behind the arrangement.

Petitioner's deductions for documentary stamps of $305.10 and for interest accrued in the sum of $275.77, and its dividends received credit of $13,842.22, should be allowed. Petitioner's concessions as to other deductions are without prejudice to claims for the same or similar deductions in taxable years subsequent to 1944.

Reviewed by the Court.

*Decision will be entered under Rule 50.*