MASSEY'S AUTO BODY SHOP, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Massey's Auto Body Shop, Inc. v. Commissioner
Docket No. 2860-76.
United States Tax Court
T.C. Memo 1978-414; 1978 Tax Ct. Memo LEXIS 99; 37 T.C.M. (CCH) 1723; T.C.M. (RIA) 78414; October 16, 1978, Filed *99 Held, petitioner has established by the clear preponderance of the evidence that a major purpose of a corporate transfer of assets to it was not the securing of a surtax exemption within the meaning of sec. 1551(a), I.R.C. 1954. Respondent's disallowance of such exemption is disapproved. Earl S. Wellschlager, for the petitioner. Wayne G. Chew, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a separate $ 6,500 deficiency in petitioner's 1971 and 1972 Federal income taxes. The sole issue is whether petitioner has established by "the clear preponderance of the evidence that the securing of" an additional surtax exemption "was not a major purpose of" the transfer of property to it at its incorporation within the meaning of section 1551(a). [1]
FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Massey's Auto Body Shop, Inc. (hereinafter petitioner), a Maryland corporation, maintained its principal office in Hagerstown, Maryland, when it filed its 1971 and 1972 income tax returns with the Internal Revenue Service Center, Philadelphia, Pennsylvania, and *101 when it filed its petition in this case. Massey Ford, Inc. (hereinafter Dealer), was incorporated in Maryland in 1938. Dealer sells Ford vehicles and parts, services Ford vehicles, and prior to February 5, 1964, provided vehicle body repair services. It conducted its sales, service and body repair business at 30 East Baltimore Street, Hagerstown, Maryland. Dealer's founder was Paul C. Massey, who died on March 23, 1973. Dealer incorporated petitioner on February 5, 1964, to take over the body repair work previously carried on by Dealer. Dealer transferred property for 499 shares of petitioner's common stock which were thereafter transferred to Paul Massey prior to 1971. P. Curtis Massey, Don Massey, Jerry Massey, J. Alvin Massey and Judy Strock were all children of Paul and Margaret Massey. On the date of petitioner's incorporation, Paul Massey was 54 years of age and his four above-named sons were 28, 23, 20 and 15, respectively. At this same time, P. Curtis was employed in an unrelated business in Salisbury, Maryland. Don was employed by Dealer as a service writer in the service department and as a trainee learning all phases of service and body repair work. Don *102 had been employed for less than one year; he had served with the United States Air Force prior to this. Jerry was a full-time college student with no immediate plans to accept employment with Dealer. J. Alvin worked for Dealer on a part-time basis. In 1971 and 1972, petitioner and Dealer had the same officers and substantially the same directors. Petitioner's body repair business has not been conducted at the same location as previously carried on by Dealer. Petitioner's operations are performed in a separate building purposely constructed for it. Although Dealer's and petitioner's facilities are in close proximity, petitioner has separate entrances and its building is clearly marked by its name. Apart from corporate officers and directors, the same personnel do not serve both corporations; and each corporation maintained its own separate operating equipment which was not interchanged. Each corporation maintains separate books, separate payrolls for employees, and separate health insurance plans. Petitioner separately shouldered the expense of its separate operation; it paid its own rent, and shared telephone expenses with Dealer. Petitioner used a separate office in Dealer's *103 facilities for administrative purposes. Petitioner was listed as a body shop under Dealer in the white pages of the 1971 and 1972 telephone book with the same telephone number as Dealer. In both telephone books, however, petitioner took out a separate advertisement in the yellow pages. In both 1971 and 1972, Dealer advertised itself in the Hagerstown City Directory as having a body shop. Although petitioner did not advertise extensively, it maintained a separate sign on its building reflecting that it was a separate corporation from that of Dealer. Customers have direct access to petitioner through two alleys and through Dealer's car lot, the latter being the most common approach. Gross labor sales profit for body shop operations from 1961 to 1969 increased in the following percentages: Year
Percentage
1961
28
1962
(15)
1963
56
1964
50
1965
12
1966
13
1967
17
1968
10
1969
15
Prior to petitioner's incorporation, very little work, if any, was done on non-Ford products because customers believed the body shop only worked on Ford vehicles. Since incorporation and the elimination of "Ford" from the body shop name, non-Ford work has increased. *104 Prior to petitioner's incorporation, Paul Massey discussed the possibility of a separate entity for petitioner with Thompson, then an employee of Dealer. William Thompson, petitioner's manager since incorporation, suggested at that time that separating the body shop would increase its volume of work by eliminating the impression that the body shop worked only on Ford vehicles. During calendar years 1964 through 1974, Dealer received approximately $ 67,171.91 in wholesale parts incentives from Ford Motor Company through sales to petitioner of Ford automotive parts on a wholesale basis. Under the wholesale incentive program a Ford dealership receives a discount on the purchase of certain Ford parts when it resells them to a wholesaler, who in turn resells them to a customer. No discount is given to a Ford dealer for direct retail sales of such parts. In addition, although no discount is given for the use of such parts within the dealership itself, if the dealer is to install the parts on fleet accounts or governmental agencies, a discount is allowed. Twenty-five percent of petitioner's work is on fleet and government accounts. As a result of incorporation, therefore, petitioner *105 obtained approximately 75 percent of $ 67,171.91 ($ 50,378.93) in wholesale discounts which it would not have obtained without incorporation. In pre-incorporation discussions with his son Jerry Massey, Paul Massey indicated that the incorporation of the body shop offered a distinct advantage in qualifying a dealership for the wholesale parts incentive program. At the time of petitioner's incorporation, Dealer operated under a franchise agreement with Ford Motor Company which designated Paul Massey as the principal owner with overall control. On the death or physical or mental incapacity of the principal owner, Ford Motor Company could, subject to the interim agreement provisions, terminate the franchise agreement. Under the interim provisions, the franchise would be offered to the last person nominated by the principal owner provided, among other things, that Ford Motor Company was notified in writing of the nominee prior to the principal owner's death, Ford Motor Company accepted the nominee as being qualified at the date of its notification or as capable of becoming so within five years, and the nominee qualifies to assume full management authority at the date of termination. *106 In the event of the principal owner's death, and a nominee failed to qualify under Ford Motor Company guidelines as an operator of the franchise, Ford Motor Company would refuse to grant a continuance of the old franchise or a new franchise. At the time of petitioner's incorporation, it was speculative whether Don Massey, nominee-successor, would have qualified for a franchise under Ford Motor Company guidelines then in effect. Prior to petitioner's incorporation, Paul Massey discussed incorporating the body shop with members of his family and an employee of Dealer. He indicated that incorporation of the body shop would give his sons an opportunity for small business management training. In addition, if Dealer's franchise were terminated during his life or at his death, he felt the separate body shop company could provide a livelihood for his family. Paul Massey's attorney and accountant advised him of the tax consequences of incorporating petitioner; however, the accountant did not believe tax considerations were the principal purpose of incorporating. Paul Massey never discussed tax considerations with his family or employees as being a factor of incorporation. Petitioner *107 utilized a full $ 25,000 surtax exemption in both 1971 and 1972. Respondent denied petitioner the availability of any surtax exemption for either year on the ground that, under section 1551, a principal purpose of the transfer of assets from Dealer to petitioner was to secure an additional surtax exemption. OPINION We must determine whether petitioner is entitled to a $ 25,000 surtax exemption in 1971 and 1972. Respondent, relying on section 1551(a), [2] contends that it is not since a major purpose of the transfer of assets from Dealer to petitioner was to secure the exemption. Petitioner contends that, although Paul Massey was aware of the additional surtax exemption, it was not a major purpose of the transfer. It contends the transfer was made for the following purposes: (a) to obtain additional money through the wholesale parts incentive program, (b) to promote business expansion, (c) to provide management training for his sons, and (d) to provide a livelihood for his family should his franchise be terminated on his death. We agree with petitioner. *108 Section 1551(a) provides in part that if a corporation transfers property (other than money) to another corporation which was created for the purpose of acquiring such property, and after such transfer the transferor corporation or its stockholders are in control of the transferee corporation, then the transferee corporation shall not be allowed the $ 25,000 surtax exemption unless it establishes by a clear preponderance of the evidence that the securing of such exemption was not a major purpose of such transfer. The sole matter in controversy is whether "a major purpose" of the transfer was to secure the surtax exemption. [3]
The prohibited purpose *109 need not be the sole or principal purpose of the transfer; it is sufficient if it is a major one. Thus, the taxpayer must prove by a clear preponderance of the evidence that the securing of the surtax exemption was not a major purpose of the transfer. Hiawatha Home Builders, Inc. v. Commissioner,36 T.C. 491, 498 (1961); Cronstroms Manufacturing, Inc. v. Commissioner,36 T.C. 500, 506 (1961); Truck Terminals, Inc. v. Commissioner,33 T.C. 876, 884 (1960), affd. 314 F. 2d 449 (9th Cir. 1963). This is a fact issue to be determined upon a consideration of all the circumstances relevant to the transfer. Truck Terminals, Inc.,supra; Sno-Frost, Inc. v. Commissioner,31 T.C. 1058, 1062 (1959). The taxpayer may carry its burden if it can show that there were such purposes for making the transfer and that it would have been made regardless of whether an additional surtax exemption could have been secured. Beacon Auto Radiator Repair Co. v. Commissioner,52 T.C. 155, 161 (1969); Bush Hog Manufacturing Co. v. Commissioner,42 T.C. 713, 728 (1964); Cronstroms Manufacturing, Inc. v. Commissioner,supra at 506; *110 Hiawatha Home Builders, Inc. v. Commissioner,supra at 499. After a careful review of the entire record, we conclude that petitioner has carried its burden on this issue since we believe the transfer would have been made regardless of whether an additional surtax exemption was available. First, and most important, Dealer earned an additional $ 50,378.93 through the Ford Motor Company wholesale parts incentive program by separately incorporating the body shop.Paul Massey indicated prior to incorporating petitioner that he believed the move would increase Dealer's participation in the incentive program. The results show that he was correct. Second, Thompson, the body shop manager, indicated to Paul Massey prior to incorporation that, in his opinion, incorporating the body shop would enhance expansion of the body shop's non-Ford work. Thompson believed that customers were under the impression that the body shop worked only on Ford vehicles. Thompson testified that non-Ford work increased after incorporation. Respondent attempts to minimize the significance of this expansion factor by suggesting that petitioner advertised very little. Nevertheless, for whatever *111 reason, the body shop's non-Ford work did increase without the advertising. In fact, the record indicates that no advertising was needed because business was expanding. The purpose of section 1551 is not to discourage expansion of an existing business accompanied by the formation of new corporations. Hiawatha Home Builders, Inc. v. Commissioner,supra at 499. We are convinced on the record before us that Paul Massey believed that the incorporation would expand non-Ford business, and it did. Third, we note that Paul Massey wanted a separate business to train his sons and to provide a livelihood for his family if the Dealer's franchise were terminated on his death. While we may question the necessity of a separate corporation to achieve the first goal, the evidence is clear that Massey was concerned that the Dealer franchise might terminate on his death thereby leaving his family without this income source. Respondent attempted to show that it was not certain that Don Massey, the nominee-successor, would not be offered a new franchise. Respondent misses the point. If there was any doubt whether a new franchise would be granted, we believe Paul Massey was *112 justified in forming a second corporation whose business would survive a possible Dealer franchise termination. The record clearly points out Paul Massey's concern in this area and we recognize it as a viable reason for the transfer. Fourth, the only evidence in the record that obtaining the additional surtax exemption was a purpose of the transfer is that Paul Massey's attorney and accountant advised him of the possible tax benefits. Nevertheless, the accountant indicated that he did not believe this was a major purpose of the transfer. Also, in all the discussions Paul Massey had with his family and employees prior to incorporation, he never mentioned the tax benefits. See, Bush Hog Manufacturing Co. v. Commissioner,supra at 727. Finally, petitioner operated as a separate entity notwithstanding its close proximity to Dealer. It maintained separate employees, equipment, books, and accounted for intercompany transactions. Considering all these factors together, we are convinced that Paul Massey would have proceeded to incorporate petitioner and transfer Dealer assets to it regardless of whether an additional surtax exemption was available. Accordingly, *113 we find that securing a surtax exemption was not a major purpose of the transfer. To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Sec. 1551(a). In General.--If-- (1) any corporation transfers, on or after January 1, 1951, and on or before June 12, 1963, all or part of its property (other than money) to a transferee corporation, (2) any corporation transfers, directly or indirectly, after June 12, 1963, all or part of its property (other than money) to a transferee corporation, or (3) five or fewer individuals who are in control of a corporation transfer, directly or indirectly, after June 12, 1963, property (other than money) to a transferee corporation, and the transferee corporation was created for the purpose of acquiring such property or was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor or transferors are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then for such taxable year of such transferee corporation the Secretary or his delegate may (except as may be otherwise determined under subsection (d)) disallow the surtax exemption (as defined in section 11(d)), or the $ 100,000 accumulated earnings credit provided in paragraph (2) or (3) of section 535(c), unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer.↩
3. In its reply brief, petitioner first raised the argument that the control provisions of sec. 1551(b) are not satisfied. Respondent determined in his notice of deficiency that all elements of sec. 1551 were satisfied. Petitioner has the burden to prove otherwise. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.↩ Petitioner presented no evidence at trial to prove the control provisions were not satisfied; accordingly, we reject its argument on this point.